**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **MARIANNE BESSEY, ET. AL.** | : | **CIVIL ACTION NO.  11-CV-7099** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SPECTRUM ARENA, L.P.** | : | |
| **Defendant** | : | |
| | : | |

**MEMORANDUM**

**J. Tucker**                                                    December ___, 2011

Presently before the Court is Plaintiff's Motion for a Preliminary Injunction (Doc. 2),

Defendant's Response in Opposition thereto (Doc. 5), and all related information presented to the

Court during the preliminary injunction hearing on December 5, 2011.  For the reasons set forth

below this Court will deny Plaintiff's Motion.

**FACTUAL BACKGROUND**

Plaintiffs Marianne Bessey and Edward Coffin, filed the instant action against Defendant

Spectrum Arena, L.P. (SALP) seeking a preliminary injunction to enjoin the Defendant from

enforcing its policy prohibiting all unauthorized leafleting and picketing on the sidewalks within

the parking lot area on the exterior of the Wells Fargo Center.

Plaintiffs, are animal rights activists who have demonstrated against animal exploitation

and abuse at numerous venues throughout the years.  Defendant SALP is a Pennsylvania limited

partnership and the leaseholder of the Wells Fargo Center and its adjacent parking structure.

Defendants have an express policy against unauthorized leafleting and picking at the Wells Fargo

Center.  In 2010, Plaintiff accompanied by other protestors, attempted to hold a demonstration to protest the alleged mistreatment of animals by the Ringling Brother's Barnum and Bailey Circus (the "Circus") within the parking lot of the Center.  The Center's security personnel escorted Plaintiff Bessey and her fellow protestors from the Center and refused to allow them access unless they purchased a ticket.  The protestors then purchased a ticket and thereby re-entered the grounds.  After the Philadelphia Police refused to arrest them, SALP filed a Complaint in Trespass against Bessey in the Court of Common Pleas of Philadelphia County and sought a Temporary Restraining Order prohibiting her continued trespass. Defendants later filed a second state court action for trespass against Plaintiff Marianne Bessey after she attempted to hold another demonstration in the parking lot of the Center.  The action is currently pending before the court. Spectrum Arena Ltd. Partnership v. Marianne Bessey, Court of Common Pleas of Philadelphia County, February Term, 2011 - No. 1684.

Currently, Plaintiffs wish to hold demonstrations at Feld Entertainment's production of Disney on Ice due to the financial connection between Feld Entertainment and the Circus. Disney on Ice is a ten-day production, scheduled to begin on December 22, 2011.  Plaintiffs hope to hand out leaflets and hold signs and/or banners during the event.   At least one of them may dress as an elephant or other circus animal.  Plaintiffs would also like to have stationary signs, and/or folding tables that will hold literature about their cause, as well as flat screen televisions depicting videos about the treatment of animals.  They may also carry televisions as they walk and speak with patrons on their way to the entrance.

Plaintiffs allege that a preliminary injunction is necessary since the state proceeding will not necessarily resolve uncertainty about the legality of SALP's speech ban as it pertains to

Bessey and Coffin and because the state proceeding may not reach a resolution before Plaintiffs wish to protest on December 22, 2011.  (Compl. ¶¶ 4-6.)

A preliminary injunction hearing on the matter took place before this Court on December 5, 2011.  The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Civil Procedure 52(a)[1]:

## I.   FINDINGS OF FACT

1.   Plaintiffs Marianne Bessey and Edward Coffin are both individuals residing in Pennsylvania.

2.   SALP is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania.

3.   The partners of SALP are all private individuals and entities.

4.   SALP owned and operated the Philadelphia Spectrum, a sports arena located at Broad and Pattison, Avenues in Philadelphia.

5.   In the early 1990s, SALP actively began development of what is now known as the Wells Fargo Center.

6.   The Wells Fargo Center is bounded by Broad Street on the west, Pattison Avenue on north, 11th Street on the east and I-95 on the south. Lincoln Financial Field is adjacent to the Wells Fargo Center on the 11th Street side of the complex and the parking lots for Citizens Bank Park are adjacent to the Center on the Pattison Avenue side of the complex

7.   It cost approximately $220,000,000 to develop and construct the Center; approximately $25 million of the funding came from the City and the Commonwealth.  The remaining balance was provided by private individuals and entities, including Ed Snider.

8.   The City of Philadelphia, through the Philadelphia Authority for Industrial Development (the "Authority"), sublets City property to SALP pursuant to a 29-

---

[1]  Federal Rule of Civil Procedure 52(a) states in relevant part: "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately."

year ground lease for the construction of the Wells Fargo Center.

9.   Section 3.01 of the Lease Agreement provides that the Authority leases to SALP "the Premises and any and all appurtenances, easements, rights, licenses, hereditaments and privileges as may in any way belong to or appertain thereto or inure to the benefit thereof."

10.  The initial lease term expires on August 31, 2025 and SALP has an option to renew the Lease Agreement for three additional 10 year terms.

11.  The Lease requires SALP to pay the City over $2 million a year in property taxes by way of a Payment in Lieu of Taxes.

12.  The Lease imposes the following restrictions upon SALP's operation of the Center: 1) to operate the Center in a first class manner; 2) to execute leases with the Flyers and 76ers; 3) to comply with law; and 4) to establish parking covenants.

13.  Specifically with respect to the parking covenants, the Lease requires SALP to do the following: 1) to permit the City's Park & Ride program; 2) to make parking lots available to the City in the event of "a municipal or state emergency, SEPTA strike or similar event, so long as the use of the Parking Areas does not interfere with or prevent a scheduled event at the complex; 3) to cooperate with the other facilities in the Sports complex, namely Lincoln Financial Field and Citizens Bank Park, to make their respective parking lots mutually available for overflow parking from events at each of the three venues; 4) to make space available for the operation of a "police mini station" on its property; and 5) to cooperate with the City in the scheduling of events of National significance; i.e. the Republican National Convention of 2000.

14.  SALP exercises exclusive control over the Center's daily operations.

15.  SALP pays the Authority rent under the Lease in a defined amount, without regard to the revenue or profit generated by the Center.  The City does not receive any portion of the ticket or parking revenue received from the operation or management of the Center, although the City collects an amusement tax levied on a per-ticket basis.

16.  The Ringling Brothers Barnum & Bailey Circus has been produced by Feld Entertainment since at least 1980. Disney on Ice has been produced by Feld Entertainment since 1980. Disney on Ice has been appearing at the Spectrum, and then at the Wells Fargo Center, since 1980.

17.  This year's Disney on Ice production, "Dare to Dream", is a family show starring various Disney princesses. The production does not involve the use of animals.

-4-

18.     SALP has adopted and enforces an express policy prohibiting protests, picketing, soliciting money or distributing literature at the Wells Fargo Center. The ban does not apply to authorized concessionaires selling souvenirs, programs, food and/or beverages consistent with the purposes for which the Wells Fargo Center is utilized or distribution of pre-approved literature or programs related to the shows that the event organizers seek to promote. To the extent any flyers or programs are distributed on SALP grounds, they are pre-approved by SALP's marketing department in advance, and are part of the event

18.     Neither the City of Philadelphia, the Authority nor any other governmental organization participated in the development or enforcement of this policy. The same policy prohibiting protests has been in place and equally enforced since, at least, 1994. Labor union protests that took place while SEPTA negotiations took place inside the Spectrum were confined to the public sidewalk adjacent to Pattison Avenue. Protests of former 76er player, Alan Iverson's song "Racial Unity" were also confined to the public sidewalk outside the complex.


II.     **CONCLUSIONS OF LAW**

1.     "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."

2.     Whether to issue a preliminary injunction depends on four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting preliminary relief is in the public interest. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).

A.     *First Amendment*

3.     Plaintiffs are not likely to succeed on their claim that SALP's ban violates Plaintiffs' First Amendment rights.

*State Action*

4.     First Amendment rights, like most federal constitutional rights, are secured only against infringement by state action. See Cent. Hardware Co. v. NLRB, 407 U.S. 539, 547 (1972).

5.     "In determining whether a private actor has acted under color of state law . . . the facts are crucial, Crissman, 289 F.3d at 233; state action is present only when the

totality of facts demonstrate a sufficiently close nexus between the government and the private entity so that the conduct of the private entity can be fairly attributed to the government. See Brentwood Acad. v. Tenn. Sch. Athletic Ass'n., 531 U.S. 288, 295 (2001)(citations omitted).

6.     A private entity may only be deemed to be acting under color of law if it has been delegated an inherently governmental function, acts under government coercion, or is engaging in a symbiotic relationship with a governmental agency or in activity with which the government is pervasively entwined. Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009); Crissman v. Dover Downs Entertainment, Inc., 289 F.3d 231, 239 (3rd Cir. 2002) (en banc); Francis v. Lehigh Univ., No. 10-4300, 2011 WL 204749 (E.D. Pa. Jan. 24, 2011) (Tucker, J.).

7.     No single fact constitutes "a necessary condition across the board for finding state action." Id. at 295. Instead, the nexus between the state and the private conduct can only "be attributed its true significance" by "by sifting facts and weighing circumstances" of the particular case. Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961);

8.     A governmental function is one that is "traditionally the exclusive province of the State." Rendell-Baker, 457 U.S. at 842 (1982).

9.     Governmental contacts separately are insufficient to establish that a private entity is performing a governmental function, acting under governmental coercion or is engaging in a symbiotic relationship with a governmental entity or activity in which the government is pervasively entwined and cannot, when considered together, establish state action. Crissman, 289 F.3d at 244.

10.    While professional sports, concerts and other entertainment events enhance the cultural and civic life of a community, providing these services is not the exclusive province of the State and, in fact, is not a governmental function. See Chicago Acorn v. Metro. Pier & Exposition Auth., 150 F.3d 695, 702 (7th Cir. 1998); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1456-57 (10th Cir. 1995); Int'l Soc'y for Krishna Consciousness, Inc. v. Reber, 454 F. Supp. 1385 (C.D. Cal. 1978).

11.    Serving a public function or receiving funds from a governmental entity does not qualify as performing a governmental function. Rendell-Baker, supra, 457 U.S. at 840-41. See also Crissman, 289 F.3d at 244 (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)) (government's financially advantageous contractual involvement and interaction with a private entity is insufficient to make that private entity a state actor).

-6-

12.    The receipt of public funding to encourage a private entity to, or to facilitate a private entity's performance of a function benefitting the public is insufficient to establish a "symbiolic relationship" between the private entity and the state, or to constitute the state's pervasive entwinement in the operation of a private entity. Rendell-Baker, 457 U.S. at 842-43; Brentwood Acad., *supra*, 531 U.S. at 299; Stark v. Seattle Seahawks, Civ. A. No. 06-1719, 2007 U.S. Dist. LEXIS 45510 (W.D. Wash. June 22, 2007) (government's monetary contribution to the development of a sporting and/or entertainment facility is not the type of involvement sufficient to establish a symbiotic relationship with the facility's owner or operator).

13.    The fact that the City benefits from the operation of the Wells Fargo Center by virtue of collecting tax and other ancillary revenue is inadequate to demonstrate government action. *Crissman*, 289 F.3d at 244 ("it would be a radical concept if the state's receipt of funds from private actors were to convert them into state actors.

14.    The fact that SALP benefits financially from its participation in the City's Park & Ride program and its agreement to "cooperate" with the City in scheduling events of National significance -- the only such event being the Republican National Convention in 2000 -- is inadequate to demonstrate government action. *Crissman*, 289 F.3d at 243 (racetrack's agreement with state to house and operate video lottery and its receipt of commission from the state in return did not implicate the state in private activity).

15.    The City's leasing (through the Authority) underutilized land to SALP at market rates, its limited right to approve the design of the Wells Fargo Center, the limited use of the Center's parking lots for purposes unrelated to events occurring there, SALP's payment of taxes (including payments in lieu of property taxes) and the government's providing of 11% of funding of the development and construction costs, neither standing alone, nor when considered in total, create a symbiotic relationship between the City and SALP, or pervasively entwine the government in the operation of the Center. Crissman, 289 F.3d at 244; Gannett Satellite InfoNetwork, Inc. v. Berger, 894 F.2d 61, 67 (3d Cir. 1990) (finding that the concessionaires leasing space at Newark Airport are private entities pursuing private ends); Gallagher, 49 F.3d at 1456-57 (actions of private security at a concert venue leased from a public entity cannot be attributed to state); *Ponce v. Basketball Fed'n of P.R.*, 760 F.2d 375, 381-82 (1st Cir. 1985) (private sporting organization's revocation of plaintiff's right to play in basketball league did not constitute state action notwithstanding the league's use of public recreational facilities)

16.    SALP is not a state actor.

### *Content Neutral Restriction*

17.   Where state action is present, content neutral prohibitions of protests or demonstrations are permitted in non-public forums. Int'l Soc'y for Krishna Consciousness v. N.J. Sports & Exposition Auth., 691 F.2d 155, 158 (3d Cir. 1982).  Restrictions on speech in a nonpublic forum must be reasonable and viewpoint-neutral.  *Id.*

18.   Even if SALP were considered a state actor, the Wells Fargo Center is not a public forum. The third Circuit has made clear that sports arenas are not public forums and, therefore, content neutral bans of protest activities are appropriate even at government owned facilities. Int'l Soc'y, 691 F.2d at 163.

19.   The reasonableness of a restriction on speech in a nonpublic forum depends on whether the restriction is consistent with the government's legitimate interest in preserving the use of the forum for its intended purpose.  Cornelius,473 U.S. at 809; *Perry*,460 U.S. at 50-51.

20.   Protesting inside the parking lot and sidewalks of the Center would disrupt the follow of traffic and possibly lead to confusion and confrontation amongst the Patrons.

21.   The parking lot of the Wells Fargo Center is used only to serve SALP's commercial purposes and is "dedicated not to expressive activity, but to temporary storage of motor vehicles." Radich v. Goode, 886 F.2d 1391, 1398 (3d Cir. 1989).  Likewise, the sidewalks abutting the Wells Fargo Center serve SALP's commercial purposes and are not dedicated to expressive activity, but rather allow SALP's patrons to walk between the parking lot and the doors to the Wells Fargo Center.

22.   SALP's policy survives constitutional scrutiny because it is reasonable and SALP's restriction on picketing, soliciting money, and distributing literature is a legitimate means to preserve the intended use of the Center.

**B.   *Pennsylvania Constitution Claims***

23.   Article I, § 7 of the Pennsylvania Constitution states that "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

24.   Article I, § 20 states that "[t]he citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the power of government for redress of grievances or other proper purposes, by

petition, address or remonstrance."

25.     The Pennsylvania Constitution's protections of free speech applies to private
        conduct, where private landowners open their property to the public for a public
        purpose. *See Tate*, 432 A.2d at 1390 (Pa. 1981)(holding that a private landowners
        power to exercise his or her property rights to silence speech criticizing the public
        assembly will be limited if the property is compatible with that kind of protest
        speech.).  In Western Pennsylvania Socialist Workers 1982 Campaign v.
        Connecticut General Life Ins. Co., 515 A.2d 1331 (Pa. 1986), a plurality of that
        court noted that *Tate* does not offer access to private property that has not been
        opened to the public for presentation of matters of public controversy.

26.     That does not mean however, that the Center becomes open for all purposes.
        Rather, under Tate and its progeny, SALP must allow public access for response
        on issues of public concern when it invites the public to hear about such issues.

27.     Disney On Ice is a family entertainment event and not a political event of national
        importance. No animals are involved during this production. Therefore, the event
        does not convert the Wells Fargo Center into a forum for discussion.

28.     As such, the Court finds that Plaintiffs have no right under the Pennsylvania
        Constitution to engage in expressive activities at the Wells Fargo Center.

**C.     *Irreparable Harm and Public Interest***

29.     Irreparable injury exists only if constitutional interests are threatened or impaired
        at the time the plaintiff seeks relief. Elrod v. Burns, 427 U.S. 347, 373 (1976);
        Miller v. Penn Manor Sch. Dist., 588 F. Supp. 2d 606, 630 (E.D. Pa. 2008)
        (emphasis added).

30.     Plaintiffs will not suffer irreparable injury if this Court denies them injunctive
        relief.

31.     SALP has an interest in protecting its property from unwanted intruders -- an
        interest that is recognized under the due process clauses of the Fifth and
        Fourteenth Amendments. See, e.g., Kaiser Aetna v. United States, 444 U.S. 164,
        176 (1979) (United States Constitution protects "one of the most essential sticks
        in the bundle of rights that are commonly characterized as property -- the right to
        exclude others"); Lloyd Corp. v. Tanner, 407 U.S. 551, 567-68 (1972) ("Although
        accommodations between the values protected by [the First, Fifth and Fourteenth
        Amendments] are sometimes necessary, and the courts properly have shown a
        special solicitude for the guarantees of the First Amendment, this Court has never
        held that a trespasser or an uninvited guest may exercise general rights of free
        speech on property privately owned and used nondiscriminatorily for private
        purposes only.").

32.     The harm facing SALP if Plaintiffs are permitted to protest on its property outweighs any harm Plaintiffs allegedly will suffer if the Court denies them injunctive relief because protests at the Wells Fargo Center: (i) interfere with SALP's constitutional property rights; and (ii) directly interfere with SALP's commercial interests and the enjoyment of its patrons.

33.     Although the public interest may be the protection of constitutional rights under certain circumstances, there is a legitimate countervailing interest in the public's right to attend entertainment events free from solicitations and protest demonstrations that are incompatible with the enjoyment that they seek. <u>N.J. Sports & Exposition Auth.</u>, 691 F.2d at 162.

34.     The public interest does not favor Plaintiffs' request to enter upon SALP's land to protest during the presentation of Disney On Ice.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **MARIANNE BESSEY, ET. AL.** | : | **CIVIL ACTION NO.  11-CV-7099** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SPECTRUM ARENA, L.P.** | : | |
| **Defendant** | : | |
| | : | |

## ORDER

     **AND NOW**, this _____ day of December, 2011, in consideration of Plaintiff's Motion for Preliminary Injunction (Doc. 2), Defendants' Response in Opposition thereto (Doc. 5), and the evidence and testimony presented to the Court in the preliminary injunction hearing held on December 5, 2011, **IT IS HEREBY ORDERED and DECREED** that the Plaintiff's Motion for Preliminary Injunction is **DENIED**.

     **IT IS FURTHER ORDERED** that the Clerk shall mark this matter as **CLOSED** for statistical purposes.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**